1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10         **EASTERN DIVISION**
11
12   NATALIE E.,                         )   No. ED CV 19-1552-PLA
                                         )
13              Plaintiff,               )   **MEMORANDUM OPINION AND ORDER**
                                         )
14         v.                            )
                                         )
15   ANDREW M. SAUL, COMMISSIONER        )
     OF SOCIAL SECURITY                  )
16   ADMINISTRATION,                     )
                                         )
17              Defendant.               )
                                         )
18   ────────────────────────────
19                            **I.**
20                       <u>**PROCEEDINGS**</u>
21         Natalie E.[1] ("plaintiff") filed this action on August 19, 2019, seeking review of the
22   Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The
23   parties filed Consents to proceed before a Magistrate Judge on September 9, 2019, and
24   September 24, 2019.   Pursuant to the Court's Order, the parties filed a Joint Submission
25   (alternatively "JS") on October 20, 2020, that addresses their positions concerning the disputed
26   ──────────────
27         [1]   In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses
     plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date.  <u>See</u>
28   Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

1  issues in the case.  The Court has taken the Joint Submission under submission without oral
2  argument.
3
4                                              II.
5                                      **BACKGROUND**
6         Plaintiff was born in 1976.  [Administrative Record ("AR") at 30, 176.]  She has no past
7  relevant work experience.  [Id. at 30, 53.]
8         On June 25, 2015, plaintiff filed an application for SSI payments alleging that she has been
9  unable to work since April 30, 2015.  [Id. at 21; see also id. at 176-85.]  After her application was
10 denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an
11 Administrative Law Judge ("ALJ").  [Id. at 119.]  A hearing was held on June 27, 2018, at which
12 time plaintiff appeared represented by an attorney, and testified on her own behalf.  [Id. at 39-56.]
13 A vocational expert ("VE") also testified.  [Id. at 52-54.]  On July 24, 2018, the ALJ issued a
14 decision concluding that plaintiff was not under a disability since June 25, 2015, the date the
15 application was filed.  [Id. at 21-32.]  Plaintiff requested review of the ALJ's decision by the
16 Appeals Council.  [Id. at 175.]  When the Appeals Council denied plaintiff's request for review on
17 June 25, 2019 [id. at 12-16], the ALJ's decision became the final decision of the Commissioner.
18 See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action
19 followed.
20
21                                             III.
22                                **STANDARD OF REVIEW**
23        Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's
24 decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial
25 evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622
26 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).
27        "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means
28 only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

2

1   conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations

2   omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  "Where evidence is susceptible

3   to more than one rational interpretation, the ALJ's decision should be upheld."  Revels, 874 F.3d

4   at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the

5   entire record as a whole, weighing both the evidence that supports and the evidence that detracts

6   from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum

7   of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014)

8   (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ

9   in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."

10  Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80,

11  87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must

12  be judged are those upon which the record discloses that its action was based.").

14                                             IV.

15                            **THE EVALUATION OF DISABILITY**

16        Persons are "disabled" for purposes of receiving Socideal Security benefits if they are

17  unable to engage in any substantial gainful activity owing to a physical or mental impairment that

18  is expected to result in death or which has lasted or is expected to last for a continuous period of

19  at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting

20  42 U.S.C. § 423(d)(1)(A)).

22  **A.    THE FIVE-STEP EVALUATION PROCESS**

23        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

24  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468

25  F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

26  In the first step, the Commissioner must determine whether the claimant is currently engaged in

27  substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Lounsburry,

28  468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

1  second step requires the Commissioner to determine whether the claimant has a "severe"

2  impairment or combination of impairments significantly limiting her ability to do basic work

3  activities; if not, a finding of nondisability is made and the claim is denied. <u>Id.</u> If the claimant has

4  a "severe" impairment or combination of impairments, the third step requires the Commissioner

5  to determine whether the impairment or combination of impairments meets or equals an

6  impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P,

7  appendix 1; if so, disability is conclusively presumed and benefits are awarded. <u>Id.</u>  If the

8  claimant's impairment or combination of impairments does not meet or equal an impairment in the

9  Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

10  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

11  claim is denied. <u>Id.</u>  The claimant has the burden of proving that she is unable to perform past

12  relevant work. <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets

13  this burden, a <u>prima facie</u> case of disability is established. <u>Id.</u>  The Commissioner then bears

14  the burden of establishing that the claimant is not disabled because there is other work existing

15  in "significant numbers" in the national or regional economy the claimant can do, either (1) by

16  the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part

17  404, subpart P, appendix 2. <u>Lounsbury</u>, 468 F.3d at 1114.  The determination of this issue

18  comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920;

19  <u>Lester v. Chater</u>, 81 F.3d 721, 828 n.5 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1257.

20

21  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

22        At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

23  June 25, 2015, the application date. [AR at 23.] At step two, the ALJ concluded that plaintiff has

24  the severe impairments of cervical spine degenerative disc disease with radiculopathy; lumbar

25  spine degenerative disc disease; non-dominant left upper extremity brachial plexopathy versus

26  rotator cuff condition; fibromyalgia versus myofascial pain syndrome versus chronic pain; coronary

27  artery disease ("CAD") with stable angina; hypertension; and obesity. [Id.] At step three, the ALJ

28  determined that plaintiff does not have an impairment or a combination of impairments that meets

4

1   or medically equals any of the impairments in the Listing.  [Id. at 25.]  The ALJ further found that

2   plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20

3   C.F.R. § 416.967(b),[3] as follows:

4          [She] can never crawl or climb ladders, ropes, or scaffolds.  Can occasionally climb
            ramps and stairs, balance, stoop, kneel, and crouch.  Can never reach overhead
5          bilaterally.  With the nondominant left upper extremity alone, can occasionally reach
            in all other directions.  Can frequently handle and finger with the left upper extremity.
6          Can tolerate no exposure to extreme cold, vibration, or hazards such as moving
            machinery or unprotected heights.

7

8   [Id. at 26.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

9   that plaintiff has no past relevant work.  [Id. at 30, 53.]  At step five, based on plaintiff's RFC,

10  vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant

11  numbers in the national economy that plaintiff can perform, including work as a "fundraiser II"

12  (Dictionary of Occupational Titles ("DOT") No. 293.357-054), as a "survey worker" (DOT No.

13  205.367-054), and as an "information clerk" (DOT No. 237.367-018).   [AR at 31, 53-54.]

14  Accordingly, the ALJ determined that plaintiff was not disabled at any time since June 25, 2015,

15  the date the application was filed.  [Id. at 31-32.]

16  /

17  /

18  /

19

20  _____

21      [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
22  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
    the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
23  1151 n.2 (9th Cir. 2007) (citation omitted).

24      [3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
    of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
25  this category when it requires a good deal of walking or standing, or when it involves sitting most
    of the time with some pushing and pulling of arm or leg controls. To be considered capable of
26  performing a full or wide range of light work, you must have the ability to do substantially all of
    these activities. If someone can do light work, we determine that he or she can also do sedentary
27  work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
28  long periods of time."  20 C.F.R. § 416.967(b).

1

2

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) rejected the opinions of plaintiff's treating physician Charles Penick, M.D.; and (2) rejected plaintiff's subjective symptom testimony.  [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.   MEDICAL OPINIONS

### 1.   Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4]  The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan v. Comm'r

---

[4]     The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein.  See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

1   of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

2        "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

3   opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

4   at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and

5   legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528

6   F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it

7   according to factors such as the nature, extent, and length of the physician-patient working

8   relationship, the frequency of examinations, whether the physician's opinion is supported by and

9   consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see

10  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard

11  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

12  stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th

13  Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the

14  [treating or examining] doctors', are correct."  Id.

15

16        **2.    Dr. Penick**

17        Plaintiff asserts that Dr. Penick, plaintiff's treating physician from at least September 11,

18  2015, treated plaintiff for her hypertension; angina; shortness of breath; cervical spine

19  degenerative disc disease; cervical spine stenosis; cervical spinal fracture of C5-C6 vertebrae with

20  radiculopathy; muscle weakness; diastolic heart failure; systolic dysfunction; bilateral labral tears

21  of the hip; a panic disorder; and lumbar degenerative disc disease. [JS at 5 (citing AR at 824, 830,

22  1042, 1044, 4962-64, 5249).]  On June 26, 2018, Dr. Penick completed a residual functional

23  capacity questionnaire ("Questionnaire") in which he opined that plaintiff could perform less than

24  sedentary work. [AR at 5249-52.]

25        In the Questionnaire, Dr. Penick noted that plaintiff had been diagnosed with diastolic heart

26  failure; systolic dysfunction; bilateral labral tears of the hip; chronic anemia requiring transfusion;

27  cervical spinal stenosis; panic disorder; and uncontrolled hypertension.  [Id. at 5249.]  He

28  described her symptoms to include severe fatigue; chronic neck, shoulder, back, and hip pain;

severe anxiety; and blood pressure readings that on multiple occasions met the criteria for hypertensive urgency and resulted in her being sent to the emergency department.  [Id.]  He characterized the "nature, location, frequency, precipitating factor, and severity" of plaintiff's pain as follows:  "chronic cervical and lumbar back pain, hip, shoulder (rotator cuff brachial plexopathy) occurring daily.  Cervical spinal stenosis, labral tears, rotator cuff injury moderate to severe pain." [Id.]  He based his diagnoses, "fair" prognosis, and description of symptoms and limitations on echo cartography that reflected reduced systolic dysfunction and diastolic heart failure [id. at 5063]; an MRI of plaintiff's bilateral hips showing a labral tear [id. at 5028]; and two MRIs of her cervical spine reflecting moderate spinal stenosis with mild cord compression and brachial plexopathy [id. at 1890].  [Id. at 5249.]  He described her treatment as consisting of physical therapy, chronic pain management with Norco (which he noted may cause nausea and constipation), medical management of heart failure through decreasing hypertension, and iron for her chronic severe anemia.  [Id.]  He identified plaintiff's anxiety as affecting her physical condition, and noted that her pain or other symptoms were severe enough to frequently interfere with the attention and concentration necessary to sustain simple, repetitive work tasks.  [Id. at 5250.]  He stated she is capable of low stress work due to multiple musculoskeletal and cardiac problems, severe fatigue from her cardiac problems, and her anemia.  [Id.]

Dr. Penick opined the following:  plaintiff cannot sit, at any one time, for more than 30 minutes; cannot stand, at any one time, for more than 30 minutes before needing to sit down, walk around, or lie down; can sit, stand, and/or walk for about "2 hours, total, out of 8"; would require unscheduled breaks; can rarely lift and/or carry ten pounds; can rarely twist, stoop/bend, and crouch; can never climb ladders; can occasionally climb stairs; has limitations in doing repetitive reaching, handling, or fingering due to her cervical stenosis and brachial plexopathy "ranging from moderate to severe"; and would be absent from work more than 4 days per month as a result of her impairments or as a result of necessary medical treatments.  [Id. at 5250-54.]

The ALJ gave Dr. Penick's Questionnaire "little weight," based on his determination that the "highly restrictive assessment is inconsistent with the longitudinal treatment history and [plaintiff's] performance on physical examinations," which the ALJ had previously discussed in the decision.

[Id. at 29.]  He also gave "little weight" to the November 25, 2015, opinion of the physician at the initial level of review who determined that plaintiff could perform medium-level work as the "medium capacity assessment considered the impact of [plaintiff's] spine disorder, but did not adequately evaluate the impact of [her] other physical impairments, including the evidence of fibromyalgia."   [Id.]   He gave "some weight" to the August 9, 2016, RFC assessment on reconsideration, because that physician "gave further consideration to the combined impact of [plaintiff's] physical impairments in further reducing her to a light capacity assessment."  [Id.]  The ALJ also explained that although he gave "some weight" to this assessment, "more restrictive postural, manipulative, and environmental limitations were adopted based on the complete record, including the evidence of obesity and coronary artery disease."  [Id.]

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving Dr. Penick's opinion little weight.  [JS at 7.]  In support, she notes the following:  her day-to-day pain level is generally a 6 out of 10 [AR at 4304]; she presented with severe pain multiple times upon examination: 10/10 pain in multiple places [id. at 511], "ripping" 10/10 pain radiating from her right upper quadrant to her left upper quadrant [id. at 1138], 10/10 pain radiating from her head down the right arm [id. at 3387], 10/10 sharp abdominal pain radiating to the right and wrapping around her back [id. at 4017], 10/10 right-side temporal pain [id. at 4710], 10/10 neck pain with cervical radiculopathy [id. at 4954], and 10/10 chest pain not aided by Norco or oxycodone [id. at 1138].  She also notes that a limited range of motion due to pain was found in multiple examinations [id. at 85, 712, 820, 858, 880, 907, 992, 1002, 1008, 1850, 4638].  [JS at 6-7.]  Plaintiff asserts that although the record may have reflected that she performed at an increased level for some examinations as noted by the ALJ, the medical evidence also reflects that plaintiff "frequently presented in extreme pain for examinations and regularly had a limited range of motion due to that pain."  [Id. at 7.]  She submits that the ALJ, therefore, simply substituted his judgment for that of plaintiff's trained physician and, because there was no physical consultative examination, "the ALJ's rejection of Dr. Penick's treating opinion was only supported by opinions from state agency physicians who never examined or treated" plaintiff.  [Id.]  She further submits that Dr. Penick's opinion was based on his three years of knowing plaintiff, treating her, and

1  "experiencing her severe physical impairments firsthand."  [Id.]

2  Defendant responds that the ALJ properly weighed the medical opinions.  [Id. at 8.]  He

3  notes that two of the three physicians who "evaluated Plaintiff found that Plaintiff was more

4  capable than the ALJ ultimately concluded: after reviewing Plaintiff's medical records, [in

5  November 2015] State agency consulting physician R. Jacobs, M.D., concluded that Plaintiff could

6  perform a range of medium-exertion work" and, in August 2016, "State agency consulting

7  physician Carol Hutchinson, D.O., separately reviewed Plaintiff's medical records and found that

8  Plaintiff could perform a range of light work with fewer postural, manipulative, and environmental

9  limitations than Plaintiff's RFC."[5]  [Id. (citing AR at 29, 66-67, 91-93, 5250-52).]  Defendant further

10  notes that the ALJ "assessed a highly tailored RFC for light work, with no overhead reaching

11  bilaterally, no crawling, and no climbing ladders, ropes or scaffolds; only occasional reaching in

12  any direction other than overhead with the non-dominant left upper extremity, balancing, stooping,

13  kneeling[,] crouching, and climbing ramps and stairs; frequent handling and fingering with the left

14  upper extremity; and no exposure to extreme cold, vibration, or hazards such as moving

15  machinery or unprotected heights."  [Id. (citing AR at 26).]  Defendant asserts that the "ALJ

16  explained that the weight of the evidence, specifically, the medical evidence and Plaintiff's

17  treatment history, best comported with the limited range of functioning delineated in Plaintiff's

18  RFC," and that these "specific and legitimate reasons were supported by substantial evidence."

19  [Id. at 8-9 (citing AR at 26-30).]

20  Defendant also contends that plaintiff ignored various instances in the record "where she

21  had normal ranges of motion in her neck, back, and upper and lower bilateral extremities."  [Id. at

22  12 (citing AR at 357, 450, 712, 750, 1421, 1435, 1516, 1677, 1689, 1823, 2317, 2469, 3389, 3404,

23  4019).]  He observes that while plaintiff pointed to a July 1, 2015, treatment record reflecting

24  _____

25  [5]  Specifically, Dr. Hutchinson determined the following:  plaintiff can occasionally lift and/or carry 20 pounds, frequently 10 pounds; can sit, stand, and/or walk about 6 hours; can frequently

26  climb ramps and stairs, balance, stoop, kneel, and crouch; can never climb ladders, ropes, or scaffolds, and crawl; is limited in her ability to reach with her left upper extremity in front and/or

27  laterally, and overhead, and with her right upper extremity overhead; unlimited handling and fingering; should avoid concentrated exposure to extreme cold and vibration; and should avoid

28  even moderate exposure to hazards such as machinery and heights.  [AR at 92-93.]

decreased range of motion in the neck, "she overlook[ed] that the examination also revealed full range of motion in the back, no motor deficits, no sensory deficits, a normal gait, and other unremarkable findings that supported the ALJ's conclusion that while Plaintiff had limitations, [she] retained a significant degree of functioning consistent with the limited range of work delineated in her RFC." [Id. (citing AR at 712).]  He further asserts that plaintiff failed to "challenge, let alone establish reversible error in, the ALJ's conclusion that the efficacy of Plaintiff's treatment undermined Dr. Penick's assessment of debilitating limitations." [Id.]

Plaintiff replies that the Commissioner erred in "improperly comparing generally normal mental status examination findings with Dr. Penick's finding that [plaintiff's] pain and other symptoms would frequently interfere with [her] ability to concentrate and pay attention well enough to sustain simple, repetitive work tasks," because these are "two different aspects entirely and the Commissioner's identification of generally normal mental status examination findings does not take away from [plaintiff's] ability to concentrate and pay attention due to the pain resulting from her physical impairments." [Id. at 13.]  She argues that the medical evidence reflecting her 10/10 pain and limited range of motion findings "distinctly supports Dr. Penick's opinion and the restrictive [RFC] assessment that he imposed." [Id. at 14.]  She asserts that the "Commissioner's attempt to 'cherry-pick' examinations where less pain or normal range of motion were found does not represent [plaintiff's] condition as a whole," and observes that he improperly relied upon "isolated observances" to support his theory of the case.  [Id. (citing Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001)).]  She also submits that defendant "failed to demonstrate that Dr. Penick's restrictive [RFC] was not supported by the medical evidence of record," and that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Penick's treating opinions.  [Id. at 15.]

### 3.   Analysis

Although defendant asserts that plaintiff ignored instances in the record where she had normal range of motion in her neck, back, and upper and lower bilateral extremities [JS at 12 (citing AR at 357, 450, 712, 750, 1421, 1435, 1516, 1677, 1689, 1823, 2317, 2469, 2389, 3389,

3404, 4019], a review of the records cited to by defendant -- which date from June 25, 2015, to August 25, 2017 -- also reflects that with respect to those visits, plaintiff presented to urgent care complaining of, among other things, the following: chest pain [AR at 450, 750, 1689, 2317, 4019]; headache, neck pain, or shoulder pain [id. at 712, 750, 1421, 1435, 2317, 2469, 3389, 3404, 4019]; hypertensive urgency [id. at 1421, 1435, 1823, 2317, 3389, 3404, 4019]; *decreased* range of neck motion, neck swelling, or paracervical tenderness [id. at 710-13, 2468-69]; anxiety [id. at 1677, 1689]; shortness of breath and/or dizziness [id. at 1689, 2317, 4019]; palpitations [id. at 1689]; blurred vision [id. at 1823, 3389, 3404, 4019]; radiating pain, numbness, or tingling [id. at 2317, 3389, 3404, 4019]; and bilateral lower extremity pitting edema [id. at 4019.]  Accordingly, although the treatment notes relied on by defendant may have reflected normal ranges of motion, they also reflected serious complaints.

Indeed, defendant's specific contention that, in relying on a July 15, 2015, treatment record reflecting decreased range of motion in the neck, plaintiff overlooked that the examination also reflected full range of motion in the back, no motor or sensory deficits, a normal gait, "and other unremarkable findings," itself overlooks the fact that the same examination also reveals that plaintiff went to emergency complaining of headache, neck pain, and right shoulder pain radiating to her neck; on examination swelling was observed on the right side of her neck; she exhibited right side paracervical tenderness; she complained of right arm numbness; her blood pressure was elevated at 176/98; the physician ordered a CT scan of her cervical spine; the CT scan reflected "a moderate focal central disc protrusion with contact of the ventral cord and canal stenosis"; and she was administered an intramuscular injection for treatment of her pain and inflammation.  [AR at 710-13.]  As such, when that treatment note is viewed in whole, defendant's suggestion that the "unremarkable findings" somehow overshadow the finding of a decreased range of motion in the neck, is simply not persuasive.

In this case, the ALJ gave "little weight" to Dr. Penick's June 26, 2018, treating opinion, "little weight" to the November 25, 2015, opinion of the reviewing physician who found plaintiff capable of medium work, and "some weight" to the August 9, 2016, assessment of the reviewing physician on reconsideration who -- having the benefit of more treatment records dated after

November 2015 and prior to August 2016 to review -- found plaintiff capable of light level work albeit with fewer restrictions than ultimately reflected in the ALJ's RFC assessment.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The Court notes that in 2015 the reviewing physician found plaintiff capable of medium-level work, in August 2016 the reviewing physician on reconsideration found plaintiff capable of light-level work with some restrictions and, in 2018, Dr. Penick, plaintiff's treating physician between 2015 and 2018, found plaintiff capable of no more than sedentary work.  The ALJ determined that Dr. Penick's opinion was not controlling.  However, neither of the reviewing physicians had the benefit of reviewing Dr. Penick's opinion, or any treatment notes in the record after August 2016. And, other than finding that Dr. Penick's opinion was not supported by the longitudinal treatment record, the ALJ did not appear to give any consideration to the nature, extent, and length of the physician-patient relationship, and the frequency of plaintiff's examinations during that period.

Moreover, the ALJ determined that although the opinion at the initial level of review took into consideration plaintiff's spine disorder, the reviewing physician "did not adequately evaluate the impact of [plaintiff's] other physical impairments," including fibromyalgia.  Accordingly, the opinion at the initial level of review does not serve as substantial evidence as it was not supported by or consistent with other evidence in the record.  Similarly, although the ALJ gave "some weight" to the reconsideration opinion because that reviewer further reduced plaintiff to a "light capacity assessment," the ALJ nevertheless determined that plaintiff was still even more limited than

1   reflected in that assessment, "based on the complete record, including the evidence of obesity and
2   coronary artery disease."   However, the RFC assessment on reconsideration also was not
3   supported by or consistent with the "*complete* record," <u>e.g.</u>, including records of plaintiff's heart
4   issues and other problems post-dating August 2016, and, therefore, it also does not serve as
5   substantial evidence.

6        Based on the foregoing, the ALJ failed to provide specific and legitimate reasons supported
7   by substantial evidence for discounting Dr. Penick's opinion.   Remand is warranted on this issue.

8

9   **B.   SUBJECTIVE SYMPTOM TESTIMONY**

10        Plaintiff argues that none of the reasons provided by the ALJ for discounting her subjective
11   symptom testimony is clear and convincing, and defendant counters those arguments.   Because
12   the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand
13   as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also
14   reconsider on remand, pursuant to SSR 16-3p,[6] plaintiff's subjective symptom testimony and,
15   based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for
16   discounting plaintiff's subjective symptom testimony if warranted.   <u>See</u> <u>Trevizo</u>, 871 F.3d at 678
17   n.5; <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation
18   omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence
19   undermines the claimant's complaints.'"); <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493-94 (9th Cir.
20   2015) (the ALJ must identify the testimony she found not credible and "link that testimony to the
21   particular parts of the record" supporting her non-credibility determination).

22   /

23   /

24   ————————————————

25        [6]   The Ninth Circuit in <u>Trevizo</u> noted that SSR 16-3p, which went into effect on March 28, 2016,
    "makes clear what our precedent already required:  that assessments of an individual's testimony
26   by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ]
    find[s] that the individual has a medically determinable impairment(s) that could reasonably be
27   expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the
    claimant's character and apparent truthfulness.'" <u>Trevizo</u>, 871 F.3d at 687 n.5 (citing SSR 16-3p).
28   Thus, SSR 16-3p shall apply on remand.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. <u>Trevizo</u>, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> (citing <u>Garrison</u>, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. <u>See</u> <u>Garrison</u>, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, if the ALJ determines it is warranted, the ALJ shall order a consultative examination or examinations, with the appropriate specialist(s) being provided with all of plaintiff's medical records. Second, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Penick, the ALJ on remand shall reassess the medical opinions of record, including the opinion of Dr. Penick. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Third, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[7] <u>See also</u> <u>Gutierrez v. Comm'r of Soc. Sec.</u>, 740 F.3d 519, 527-29 (9th Cir. 2014); <u>Shaibi v. Berryhill</u>, 883 F.3d 1102, 1110 (9th Cir. 2017).

---

[7]    Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff has no past relevant work.

**VII.**

**CONCLUSION**

    **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

    **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

    **This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 6, 2020

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE